Joseph P. McDonald (JM 1964)
MCDONALD & MCDONALD CO., L.P.A.
Attorney for Plaintiff
200 E. Spring Valley Rd., Suite A
Dayton, OH  45458
(937) 428-9800
joseph@mcdonaldandmcdonald.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELE WEINBERG

    Plaintiff,          Case No. 1:17-cv-8976

    v.             **COMPLAINT**

SOLIL MANAGEMENT LLC PLAN    ECF CASE

and

UNUM LIFE INSURANCE COMPANY
OF AMERICA

    **Defendants**

Now comes Plaintiff, Michele Weinberg, by and through counsel, and for her Complaint hereby states as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA) and, in particular, 29 U.S.C. § 1132(e)(1) and 1132(f). These provisions give district courts' jurisdiction to hear civil actions brought to recover benefits due under the terms of Employee Welfare Benefit Plans.  In this case, Plaintiff,

1

Michele Weinberg, asserts a claim for group disability benefits available under a Plan provided for employees of Solil Management LLC known as the Solil Management LLC Plan (hereinafter referred to as "Plan"). The Plan and Policy documents should be included in the Administrative Record that will be filed with this Court; the documents are too voluminous to file. This action may be brought before this Court pursuant to 28 U.S.C. § 1331 which gives district courts' jurisdiction over actions that arise under the laws of the United States.

2. The ERISA statute provides, at 29 U.S.C. § 1133, for a mechanism for administrative or internal appeal of benefit denials. Plaintiff has exhausted these avenues of appeal.

## NATURE OF ACTION

3. Plaintiff, Michele Weinberg, seeks an award of disability benefits, including disability income benefits, pursuant to an Employee Welfare Benefit Plan ("Plan") providing group disability benefits to employees of Solil Management LLC. This action seeking recovery of benefits is brought pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Plaintiff also seeks to enforce the right to future benefits and to require Defendants to account for past benefits and pay future benefits.

## THE PARTIES

4. Plaintiff is now disabled but was an active employee under the Plan and eligible for benefits as a qualified employee when her medical condition deteriorated and she could no longer work. Venue is proper in the Southern District of New York at Foley

Square, because Plaintiff resides in and the contract was breached in New York, New York.

5   At all times relevant hereto, the Plan constituted an "Employee Welfare Benefit Plan" as defined by 29 U.S.C. § 1002(1). While employed, Plaintiff became disabled and has coverage under the Plan as an employee because she was a participant as defined by 29 U.S.C. § 1002(7). This claim is for and relates to benefits under the foregoing Plan.

6.   The Plan's "Claim Administration" for long-term disability is run by a Plan Fiduciary, which, upon information and belief, is Unum Life Insurance Company of America (hereinafter "Unum"). Upon information and belief, long-term disability benefits are paid through a contract of insurance issued by Unum.

## STATEMENT OF FACTS

**MEDICAL / PROCEDURAL HISTORY**

7.   Plaintiff has a history of lumbar spine pathology and pain. In April 2015, (before her departure from work), an x-ray of her lumbar spine showed "exaggerated lumbar lordosis with Baastrup's disease. Lumbar spondylosis with small anterolisthesis of L4 on 5, L5 on S1 which minimally changes stable on maneuvers on flexion. Lower lumbar apophyseal joint arthrosis."

8. Plaintiff was a full-time employee of Solil Management LLC and was actively engaged in employment until May 5, 2016, when she ceased working due to lumbar pain and hip pain, which significantly reduces Mrs. Weinberg's ability to sit, stand and/or walk.

9. Plaintiff was forced to stop work in her position as a "Residential Leasing Agent" on May 5, 2016, due to the severe pain symptoms she was experiencing. Mrs. Weinberg's occupational duties included being responsible for the day to day operations of approximately 4500 apartment units; oversees policies, procedures and execution of all new and renewal leases; review all apartment applications for approval and credit evaluation; and manage and update vacancy lists several times a day.

10. The job description and its occupational equivalent (DOT 250.357-014) indicate that the work is skilled in nature and requires constant attention to details.

11. Plaintiff was required to meet a twenty-six (26) week Elimination Period before accessing long-term disability benefits. Benefits during the Elimination Period were paid directly by Plaintiff's employer between May 5, 2016 and November 3, 2016.

12. On July 20, 2015, Plaintiff saw Dr. Hui Chon Kim, an orthopedic physician, and Dr. Kim ordered new imaging studies and stated, "Concern is for her sensation of buckling with focal weakness on exam."

13. On July 24, 2015, an MRI of the lumbar spine showed "Grade I anterolisthesis" and "moderate to severe canal stenosis" at L4-5. "Grade I anterolisthesis" and "bilateral facet arthropathy" were found at L5-S1.

14. Plaintiff continued to receive medical care and treatment from Dr. Kim throughout the remainder of 2015. Mrs. Weinberg also attended physical therapy but gained no sustained relief from pain.

15. On February 3, 2016, Plaintiff saw Dr. Kim who assessed, "Ms. Weinberg presents with persistent lower back and leg pain, known lumbar stenosis." Plaintiff was asked to consider lumbar epidural steroid injections for pain management. Dr. Kim prescribed medications which included Metaxalone, Ibuprofen, Levothyroxine and Skelaxin.

16. On May 3, 2016, Plaintiff saw Joseph DeVito, M.D., who recorded that Ms. Weinberg's back symptoms are getting worse and that she is feeling significant restriction in her range of motion. Ms. Weinberg advised on that day that back pain can awaken her from sleep and that she experiences radiating pain into both legs, feet and toes bilaterally. She reported not being able to sit for more than 15 to 20 minutes at a time. Dr. DeVito's physical examination noted generalized weakness throughout the upper and lower extremities.

17. Plaintiff continued to see Dr. Kim throughout 2016 and consistently complained of worsening pain in her low back with frequent shocks of pain down her bilateral thighs. Plaintiff reported that she is unable to sit, stand or walk for prolonged periods of time and has a difficult time transitioning from sit to stand. Ms. Weinberg began epidural steroid injections in June 2016 but obtained no improvement.

18. In December 2016, Dr. Kim noted that Ms. Weinberg was antalgic and that her lumbar extension was limited to 10 degrees with pain as well as positive findings bilaterally on internal hip rotation. Mrs. Weinberg received a hip injection and pain block on December 15, 2016.

19. The Solil Management LLC LTD Plan defines disability as,

> "You are disabled when Unum determines that: 1) you are limited from performing the material and substantial duties of your Regular Occupation due to your Sickness and Injury; and 2) you have a 20% or more loss in Indexed Monthly Earnings due to the same Sickness or Injury."

20. Long-Term disability benefits were scheduled to begin on November 4, 2016. Unum issued its adverse benefit decision on December 15, 2016 denying Ms. Weinberg's access to her "own occupation" long-term disability benefits.

21. Unum's December 15, 2016, denial letter relied on the opinions of non-examining file review physicians who opined that Plaintiff would be capable of performing her Regular Occupation as a Residential Leasing Agent, which Unum perceived as "light" in physical demand.

6

22.    Unum's denial letter advised Mrs. Weinberg that she had a right to appeal the denial of her benefits.

**APPEAL**

23.    Plaintiff filed her appeal on June 8, 2017 (attached hereto as Exhibit A). The appeal included the statement under oath of Plaintiff's treating physician, Dr. Kim which discussed Plaintiff's low back pathology, objective testing (MRI, x-ray, etc.), treatment, and work capabilities. Dr. Kim opined that Ms. Weinberg would not be able to perform her "light" occupation as a Residential Leasing Agent.

24.    Included with Plaintiff's appeal was an extensive Functional Capacity Evaluation which proved that Mrs. Weinberg had a less than sedentary capability for sustained work. The appeal also contained a Vocational Opinion report which concluded that the restrictions and limitations provided by the FCE and Dr. Kim, would not permit the performance of Mrs. Weinberg's "own occupation" or "any occupation."

25.    Ms. Weinberg was successful at winning her Social Security disability claim on application without the need for an Administrative Law Judge hearing. The Notice of Award from the Social Security Administration was sent to Unum as part of Ms. Weinberg's appeal.

26.    Mrs. Weinberg's appeal included a January 2017, MRI of the lumbar spine which showed new types of pathology in new locations in the lumbar spine. Ms.

7

Weinberg's discs at L2-3 and L3-4 were described as showing, "disc protrusion with fissuring of the annulus fibrosis."

27.     Finally, the appeal document included statements from Ms. Weinberg, her husband and former co-worker at Solil who described Mrs. Weinberg's inability to meet the demands of her own occupation or complete activities in a non-work environment.

**UNUM'S APPEAL REVIEW**

28.     On August 17, 2017, Mrs. Weinberg's file was reviewed by "On-Site Physician" Scott Norris, M.D., an Occupational /Aerospace Family Medicine physician. Dr. Norris concluded that the only restrictions and limitations supported were, "...include the option to shift posture as needed and the option to change position (e.g. sit to stand) for brief periods one to two times per hour."

29.     Dr. Norris invalidated all of Mrs. Weinberg's evidence by focusing on small inconsistencies that are not relevant to whether Mrs. Weinberg meets the definition of disability.  Dr. Norris invalidates the Functional Capacity Evaluation by stating that, "it demonstrates a minimum level of functional capacity" and that, "it is not time relevant regarding the EE's functional capacity as of Nov. 2016."

30.     Dr. Norris also stated indicates that the FCE examiner noted "fatigue and poor endurance" and that, "These findings are nonspecific findings likely related to

prolonged deconditioning and would not be relevant to the EE's functional status as of Nov. 2016."[1]

31. After receipt of Dr. Norris' report, Unum issued its final denial letter dated September 6, 2017. The letter was a "copy and paste" of Dr. Norris' report and advised Mrs. Weinberg that she had exhausted her administrative remedies under the plan.

32. Dr. Norris is a full time employee of Unum. As an employee, Dr. Norris benefits from the profits that Unum generates from denying claims. Dr. Norris is a resident of Tennessee who has no private practice but lists his practice address as One Fountain Square in Chattanooga, Tennessee, which is the address of Unum Life Insurance Company. See Tennessee Department of Health license information attached hereto as Exhibit B.

## CAUSE OF ACTION I

## CLAIM FOR BENEFITS UNDER 502(a)(1)(B)

33. Plaintiff incorporates as if fully restated herein the allegations in paragraphs 1 through 32 of the Complaint.

34. Defendant Plan and Unum failed to exercise the statutorily required duty of care and prudence, failing to administer the Plan solely in the interests of the participants and beneficiaries as required under 29 U.S.C. § 1104(a)(1), and by denying the benefits to the Plaintiff contrary to the law and terms of the Plan. Unum and the Plan

---

[1] At the time of Dr. Norris' report, Mrs. Weinberg had only been out of work for a little over 1 year.

have arbitrarily ignored and selectively reviewed documents Plaintiff has submitted and has failed to provide a full and fair review.

35. Defendant Unum has an inherent "conflict of interest" as it has a dual role as both evaluator and payor of benefit claims, which is to be considered as a factor in the review of any benefit determination. The conflict of interest effected the decision to deny benefits. The conflict allowed Unum to use its own frequently retained consultants, full time medical employees and nurse reviewers and created an overreliance on non-examining physicians' opinions. Unum's medical employees disregarded relevant evidence submitted by Mrs. Weinberg with no explanation and denied benefits without using a reasoned process.

36. While Defendant Unum may have the authority to make claims determinations under applicable law and the language of the Policy, Unum's determinations as Plan Fiduciary are not entitled to deference and the review of any benefits determination must be made *de novo*.

37. As a full *de novo* review of this decision and the evidence in the claim file is required by statute, this Court may not abrogate its duty to perform such a review. Any failure to provide such a review would violate the US Constitution and deprive Plaintiff of constitutional rights, including under Article III and the principles of separation of powers, amongst others.

38. If the Court determines that an arbitrary and capricious standard of review applies to this case rather than a *de novo* standard, Unum's denial of benefits must be overturned due to the faulty evaluation, confusing methods and below market standards employed by Unum in the evaluation of evidence. Standards applicable under ERISA, including as enumerated by this Court, the Second Circuit Court of Appeals and the United States Supreme Court have been violated by Unum and an examination of the record reveals that Unum's decision to discontinue benefits is not the result of a reasoned process and that it is, therefore, arbitrary and capricious.

39. Unum and the Plan have violated their duty to provide a full and fair review of claimant's evidence by engaging in the following acts: 1) Defendants have ignored overwhelming objective and clinical evidence supplied by Plaintiff which supports her disability; 2) Defendants have improperly relied upon conclusion based peer reviews which failed to address the claimant's actual limitations, which included pain, fatigue and an inability to persist; 3) Defendants have engaged in a selective review of evidence presented by the claimant by ignoring the conclusions and clinical data offered by her treating physicians; 4) Defendants failed to provide complete and accurate information to its medical consultants regarding the Plaintiff's actual job requirements; 5) Defendants retained the ability to complete a physical exam of Plaintiff, but rather chose to rely on file review reports; 6) Defendants blame Mrs. Weinberg's problems on "deconditioning" while they ignore objective and clinical data which supports a finding of disability; 7) Defendants ignored the Plaintiff's award of Social Security disability benefits; 8) Defendants unilaterally invalidated the results of a Functional Capacity

Evaluation without sufficient explanation or understanding of the clinical evidence; 9) Defendants offer no reasonable explanation of why Dr. Kim's opinion is not reliable or well supported by extensive clinical evidence; and 10) Defendants' conclusions ignore an extensive history of clinical complaints, findings and active treatment.

40. Plaintiff has exhausted her administrative remedies and the Plans still wrongfully deny benefits to which she is entitled.

41. ERISA requires that an Employee Welfare Benefit Plan be established and maintained pursuant to a written instrument, 29 U.S.C. § 1192(a)(1).

42. The disability Plans under which the Plaintiff Michele Weinberg was a participant at the time of her disability should be included in the Administrative record filed with this Court as those documents set forth the sole criteria for benefits for the Plaintiff.

43. ERISA provides that an Employee Benefit Welfare Plan shall be established and maintained pursuant to 29 U.S.C. § 1192(a)(1). Under the terms of this Plan documents, to be filed with the Administrative record, the termination of Plaintiff's benefits was clearly unreasonable and without basis.

44. The Plan Administrator, the Plan and Unum failed to provide a full and fair review under 29 CFR 2560.503-1 thereby depriving Plaintiff of her due process. See

29 CFR 2560.503-1(g)(1)(v)(A)&(B) and 29 U.S.C. §1132(a). The Code of Federal Regulations requires an adequate explanation of why the claimant's evidence was insufficient to award benefits. Unum offered no explanation of why claimant's evidence was insufficient or why the evidence created by non-examining physicians was more reliable. Failure to comply with the Code of Federal Regulations' requirements deprived Mrs. Weinberg of valuable due process protection.

45. Plaintiff is entitled to benefits and benefits are due and owing to Plaintiff from Defendants in an amount not yet ascertainable. Plaintiff seeks the payment of these benefits under 29 U.S.C. § 1132(a)(1).

**WHEREFORE**, Plaintiff, Michele Weinberg, prays for the following relief:

- A. That the Court enter judgment in Plaintiff Weinberg's favor and against Defendants Unum and the Plan and that the Court order both Defendants to account and pay disability income benefits to Plaintiff Weinberg in an amount equal to the contractual amount of benefits to which Weinberg is entitled;
- B. That the Court order Defendants Unum and the Plan to pay Weinberg's pre- and post judgment interest on all benefits that have accrued prior to the date of judgment and enter judgment accordingly and that the Court reserve jurisdiction to enforce the equitable decree;
- C. That the Court award the Plaintiff her attorney fees pursuant to 29 U.S.C. § 1132(g); and

D.      That Plaintiff recovers all other relief to which she may be entitled, as well as the costs of the suit.

Dated this 16th day of November, 2017

Respectfully submitted,

*/s/ Joseph P. McDonald*

Joseph P. McDonald (0055230)
McDonald & McDonald Co., L.P.A.
200 E. Spring Valley Rd, Suite A
Dayton, OH  45458
Tel: 937-428-9800
Fax: 937-347-5441
Email:  joseph@mcdonaldandmcdonald.com
Attorney for Plaintiff, Michele Weinberg